UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EUGENE HAMPTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20 CV 966 CDP |
| ) | |
| CITY OF ST. LOUIS, et. al., ) | |
| ) | |
| Respondent. ) | |

# MEMORANDUM AND ORDER

Plaintiff Eugene Hampton was detained at the St. Louis City Justice Center in June and August 2019 while he was awaiting trial in Missouri circuit court. He brings this suit under 42 U.S.C. § 1983, alleging that he was subject to unreasonable use of force by Defendants Shelby Nord and Yolanda Walker while he was detained there. Hampton sues both officers in their individual capacities.

The record in the case shows that that there are no genuine disputes of material fact and that Defendants are entitled to summary judgment. Defendant Nord is entitled to qualified immunity, and Hampton has not presented evidence disputing Defendant Walker's version of events.

## Background

On October 6, 2020, Hampton filed an amended complaint under 42 U.S.C. § 1983 against Nord and Walker in their individual capacities, alleging that they

used excessive force against him in violation of the Fourteenth Amendment.[1]  In Defendants' motion for summary judgment, they argue that Nord used reasonable force and she is otherwise entitled to qualified immunity, and that Hampton's allegations against Walker are contradicted by the evidence.  When Hampton responded to the motion, he merely reiterated the allegations in his complaint, and failed to controvert Defendants' statement of facts.  (ECF 47.)  Defendants' statements of fact are thus deemed admitted for the purposes of this motion.  *See* E.D.Mo. L.R. 4.01(E).

On June 23, 2019, Hampton was moving about his housing unit at the City Justice Center when he approached Nord, who was standing alone behind a desk.  Nord was the only corrections officer in the unit at the time, supervising approximately 60 inmates, several of whom were moving freely about the unit.  When Hampton approached her, he crossed a red line on the floor that demarcated an area for officers only, and he began arguing with her about her conduct on a previous occasion.  Much of their exchange is inaudible from video footage of the incident, but Nord can be heard telling Hampton that if he did not back up past the red line, she would pepper spray him.  Hampton continued to argue with her, and, a second later, she sprayed him with a burst of pepper spray from across the desk.

---

[1] Hampton also raised claims against unknown defendants for due process violations arising from his placement in segregation following the June 23 and August 30 incidents.  I previously dismissed these claims without prejudice.  (ECF 10.)

She then ordered the other detainees to their cells and radioed for assistance. When other officers arrived, they transported Hampton to his cell and then to a medical unit where he was able to wash off the pepper spray from his eyes and skin. Hampton experienced burning and discomfort for thirty minutes to one hour after being sprayed, but he was fine after he had a shower.

Hampton alleges that on August 30, 2019, Walker pepper sprayed him after another detainee punched him in the mouth and knocked two of his teeth out. But prison work logs show that Walker was assigned to work elsewhere on that day. Walker submitted an affidavit stating that she did not pepper spray Hampton and did not witness any other correctional officer pepper spray him, on August 30 or any other date. Hampton did not submit any evidence in support of his allegation.

### Summary Judgment Standard

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). I must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. *Scott v. Harris,* 550 U.S. 372, 379 (2007).

## Discussion

A. Nord

Nord argues that she is entitled to summary judgment because her use of pepper spray was objectively reasonable and she is entitled to qualified immunity. I agree.

"Qualified immunity shields government officials from liability in a § 1983 action unless their conduct violates a clearly established right of which a reasonable official would have known." *Burnikel v. Fong*, 886 F.3d 706, 709 (8th Cir. 2018) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine whether an official is entitled to qualified immunity, the Court asks: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (en banc) (quoting *Nord v. Walsh Cnty.*, 757 F.3d 734, 738 (8th Cir. 2014)). "The defendants are entitled to qualified immunity unless the answer to both of these questions is yes." *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012).

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from "the use of excessive force amounting to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 396, n. 10 (1989)); *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (stating that

"under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"); *Smith v. Conway Cty., Ark.*, 759 F.3d 853, 858 (8th Cir. 2014) (stating that "the Due Process Clause prohibits any punishment of a pretrial detainee, be that punishment cruel-and-unusual or not"). "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396-97.

Whether the force used was objectively reasonable "turns on the facts and circumstances of each particular case." *Id.* at 397 (quoting *Graham*, 490 U.S. at 396). Because "[o]fficers facing disturbances 'are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving,' " the Court has stressed the need to view the use of force "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* at 399 (quoting *Graham*, 490 U.S. at 397). Relevant factors in evaluating the reasonableness of the use of force include: (1) "the relationship between the need for the use of force and the amount of force used," (2) the extent of the plaintiff's injury," (3) "any effort made by the officer to temper or to limit the amount of force used," (4) "the severity of the security problem at issue," (5) "the threat reasonably perceived by the officer," and (6) "whether the plaintiff was actively resisting." *Id.* at 397 (citing *Graham*, 490

U.S. at 396). I must also "account for the 'legitimate interests that stem from the government's need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that the in judgment of jail officials are needed to preserve internal order and security.' " *Id*. (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)).

Applying the law to the undisputed evidence of the case, I concludethat Nord's use of force was objectively reasonable under the circumstances. "Not every instance of inmate resistance justifies the use of force, and use of pepper spray will not be justified every time an inmate questions or seeks redress for an officer's actions." *Treats v. Morgan*, 308 F.3d 868, 872-73 (8th Cir. 2002) (internal citations omitted). However, when Hampton entered an officer only zone, and did not fully comply with instructions to leave, he threatened Nord's safety. Nord's use of pepper spray was proportional to that threat.

Nord was separated from Hampton by a desk, and Hampton did not make any direct verbal threats to her. But Nord was the sole correctional officer on duty, charged with overseeing several inmates moving freely about a housing unit—a few of whom were nearby. Hampton encroached into an officer-only zone, clearly demarcated by a bright red-line, and argued with her about her previous conduct. When Nord told him to back away from her desk, he failed to immediately do so. A quarrelsome inmate intruding into an officer's space in such circumstances

would place a reasonable officer in fear for her safety, not just that Hampton could quickly overpower her, but that several nearby inmates may do so as well. *See Fischer v. Hoven*, 925 F.3d 986, 989 (8th Cir. 2019) (officer reasonably thought arrestee was a threat when he was "the only officer on the scene with two hostile, intoxicated individuals").

Even if the threat to Nord's safety was minimal, the amount of force used was also minimal. Nord used only a short burst of pepper spray, and Hampton received medical attention shortly thereafter. *See Burns v. Eaton*, 752 F.3d 1136, 1140 (8th Cir. 2014) ("super soaker" quantities of pepper spray and refusal to allow the victim to wash off painful chemical relevant to Eighth Amendment analysis). Although Hampton experienced burning sensations and pain around his eyes and mouth, the effects subsided between thirty minutes and an hour later.

Nord also attempted to limit the amount of force used by warning Hampton that if he did not back up, she would spray him, and Hampton resisted that command. Nord analogizes the present case to cases in which the Eighth Circuit found the use of pepper spray on a recalcitrant inmate did not violate the Eighth Amendment's prohibition against cruel and unusual punishment. However, the Fourteenth Amendment gives state pretrial detainees "rights which are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.' " *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (quoting *City of Revere v.*

*Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). Thus, conclusions that a particular use of force did not constitute cruel and unusual punishment are less probative here. *See Kinglsey*, 577 U.S. at 400-01 (Eighth Amendment cruel and unusual punishment claims probative "only insofar as they address the practical importance of taking into account the legitimate safety-related concerns of those who run jails."). And Hampton's recalcitrance does not rise to that of the inmates in the cases identified by Nord. *See Burns*, 752 F.3d at 1138 (inmate refused to be cuffed, threw items and spit at officer); *Jones v. Shields*, 207 F.3d 491, 492-93 (8th Cir. 2000) (inmate refused to work and questioned officer orders).

  I agree with Nord, however, that her instruction to Hampton to back up, and his failure to do so, justify her use of pepper spray. Video footage of the incident shows that a second or so passed between Nord's instruction to Hampton to back up and her deployment of pepper spray. But within that time, Hampton continued to argue with her, and made no attempt to back up.

  "[C]orrectional officers do not have a blank check to use force whenever a prisoner is being difficult." *Treats*, 308 F.3d at 875. However, Hampton's entrance into a designated area for officers, argument with Nord—an officer supervising several unrestrained inmates—and failure to follow her instructions, sufficiently threatened Nord's safety. The use of a short burst of pepper spray that caused only temporary discomfort was proportional to that threat. Thus, Nord's

use of force was objectively reasonable, and Hampton has not shown a violation of a constitutional right. Therefore, I need not evaluate whether Nord violated a clearly established right, and she is entitled to qualified immunity.[2]

B. Walker

Hampton next argues that Walker used excessive force against him by pepper-spraying him on August 30, 2019. He claims that he was going to the medication line in his housing unit when another detainee punched him in the mouth and knocked two of his teeth out. He claims that Walker then pepper-sprayed him, not the aggressor, and took him to segregation without being allowed to shower. Walker claims that she did not see Hampton on that day and was not aware of the incident at all. To support her claim, she filed an affidavit stating the same, and a work log showing that she worked on a floor that did not house inmates from 11:00 P.M. on August 30 to 7 A.M. the next day.

In response to Defendants' motion for summary judgment, Hampton failed to provide any evidence challenging Walker's statements of uncontroverted material fact. Under Local Rule 4.01(E), "[a]ll matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for

---

[2] Even if I reached this question, Hampton would fail to show that his clearly established rights were violated. Although "[q]ualified immunity is an affirmative defense for which the defendant carries the burden of proof," the "plaintiff . . . must demonstrate that the law is clearly established." *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002) (citing *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989)). Hampton fails to address any existing law relating to his claim, let alone establishing that Nord violated a clearly established right.

purposes of summary judgment unless specifically controverted by the opposing party." "Pro se litigants are held to a lesser pleading standard than other parties." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008). But a party's "status as a pro se litigant [does] not excuse [him] from following the local rules." *Bunch v. Univ. of Ark. Bd. of Trustees*, 863 F.3d 1062, 1067 (8th Cir. 2017). And at least one other court has deemed a statement of uncontroverted material facts admitted when a pro se litigant failed to controvert those statements in compliance with local rules. *See Ne. Iowa Ethanol, LLC v. Erwin*, No. 07-CV-2008-LRR, 2007 WL 2752082, at *2 (N.D. Iowa Sept. 18, 2007).

Defendants' statement of uncontroverted material facts is thus deemed admitted. There is no genuine dispute of material fact, and Walker is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [32] is **GRANTED.**

A separate Judgment is entered herewith.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 8th day of July, 2022.